# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTY OF BARNSTABLE AT A SPECIAL TERM HELD IN DECEMBER 1859 AT BARNSTABLE.

PRESENT :

Hon. LEMUEL SHAW, Chief Justice.
Hon. THERON METCALF, ⎫
Hon. GEORGE T. BIGELOW, ⎬ Justices.
Hon. PLINY MERRICK, ⎭

---

### COMMONWEALTH *vs.* SAMUEL S. RICH.

A grand jury summoned to attend the court of common pleas, under Rev. Sts. *c.* 136, § 1, was required, after the transfer of the jurisdiction of that court to the superior court by *St.* 1859, *c.* 196, to attend that court for the residue of the year, and return their indictments there.

A physician who has not made the subject of mental disease a special study, but who, when his patients have required medical treatment on insanity, has been accustomed to call in the services of a physician who had made this subject a special study, or to recommend the removal of the patient to an hospital for the insane, is not competent to testify as an expert upon a hypothetical case put to him; nor to testify whether a person living in his neighborhood and well known to him, but who had never been his patient, was competent to apply the rules of right and wrong, in a state of circumstances concerning which he was under high excitement or the influence of an uncontrollable impulse.

INDICTMENT for murder, found and presented in the superior court at September term 1859 for the county of Barnstable, by a grand jury, which had been summoned and had attended at

April term 1859 of the court of common pleas for this county; and transmitted by the superior court to this court, after the passage of the *St.* of 1859, *c.* 282, revesting in this court the jurisdiction in capital cases which had been transferred to the superior court by *St.* 1859, *c.* 196, § 21.

At the opening of this term, the defendant in person came into court, and protested against any further proceedings, because the grand jury who found the indictment had not been summoned to attend the superior court, and therefore had no right or authority in law to return the indictment into that court and that court had no authority to receive or transmit the indictment.

But THE COURT held, that a grand jury summoned to attend at any term of the court of common pleas, being under Rev. Sts. *c.* 136, § 1, " held to serve at each term throughout the year and until another grand jury be empanelled in their stead;" and the *St.* of 1859, *c.* 196, having substituted a superior court for the court of common pleas, and transferred all the jurisdiction of that court to the superior court; all incidents of such jurisdiction were also transferred, and it became the duty of the existing grand jury, during the residue of the term for which they were originally summoned, to attend the only court which now had jurisdiction over the offences of which they had been charged to inquire and due presentment make, and to return any indictments which they might find into the superior court.

The defence relied upon was insanity. Jacob Mitchell, a witness called on behalf of the defendant, testified that he had been in practice about thirty years as a physician, the last eight years of which he had practised in Chelsea, and the eleven preceding years in Wellfleet, where the prisoner resided, and where the murder was alleged to have been committed; that h had made the subject of mental disease a study, but not a special study; that he had considered the matter only so far, in his general practice, as to determine whether a patient was in such a condition of mind as to require treatment for insanity, and if he was, he had been accustomed to call in the services of

physician who had made the subject of insanity a special study, and had had experience in the treatment of mental disease, or to recommend the removal of the patient to a hospital for the treatment of the insane.

The defendant's counsel proposed to interrogate this witness as an expert concerning the sanity or insanity of the defendant's mind upon a hypothetical case stated as arising out of the testimony; and cited *Baxter* v. *Abbott*, 7 Gray, 78.

But THE COURT refused to allow the question to be put, on the ground that, though the witness might give his opinion of the defendant's mind so far as he could testify from his personal observation, he was not shown to be competent to express an opinion as an expert on matters not within his own knowledge, but hypothetically submitted to him.

The same witness testified that he had known the prisoner during the eleven years when he resided in Wellfleet and practised there, and had seen him very frequently, and had spoken to him as he passed him almost daily in the street, and on one occasion he had conversed with him for a longer time; and that he regarded him as a person *non compos mentis.*

The counsel for the defendant then proposed to ask the witness whether, from what he knew of the mental powers of the prisoner, he would in his opinion be competent to apply the rules of right and wrong to any state of circumstances, concerning which he was under high excitement, or in reference to which he was under the influence of an uncontrollable impulse.

But THE COURT held that the question was inadmissible, because it did not relate to matters within the observation of the witness as a physician called to observe the symptoms of a patient, or to make any examination of his case, or to treat him medically; but merely to his general observation, in regard to which he had not shown himself qualified to testify as an expert.          *Verdict, guilty of murder in the second degree.*

*J. M. Day & G. Marston,* for the defendant

*S. H. Phillips,* (Attorney General,) *& B. Sanford,* (District Attorney,) for the Commonwealth.